IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| South Carolina Green Party, Eugene Platt, and Robert Dunham, | C.A. No. 3:08-02790-CMC |
| Plaintiffs, | **OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| South Carolina State Election Commission, John H. Hudgens, Cynthia M. Bensch, Tracey C. Green, Pamella B. Pinson, and Thomas Waring, in their official capacities only as Chairman and members respectively of the South Carolina State Election Commission, and the Charleston County Democratic Party, | |
| Defendants. | |

This matter is before the court on cross motions for summary judgment filed by (1) the South Carolina Green Party, Eugene Platt, and Robert Dunham ("Plaintiffs"); (2) the South Carolina State Election Commission, John H. Hudgens, Cynthia M. Bensch, Tracey C. Green, Pamella B. Pinson, and Thomas Waring ("SCSEC Defendants"); and (3) the Charleston County Democratic Party ("CCDP"). For the reasons stated below, the court grants SCSEC Defendants' motion for summary judgment, grants CCDP's motion for summary judgment, and denies Plaintiffs' motion for summary judgment.

**I. STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either

the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). All parties agree that there is no genuine issue of material fact and that summary judgment is appropriate.

## II. BACKGROUND

This case involves the interaction of three South Carolina election law statutes. Specifically, Plaintiffs request that the court determine whether S.C. Code Ann. § 7-11-10, § 7-11-15, and § 7-11-210 are constitutional as applied to Eugene Platt's 2008 candidacy for South Carolina House Seat 115.

Platt sought to be a fusion candidate in that election, specifically seeking the nomination of three certified political parties: the South Carolina Democratic Party, the South Carolina Green Party, and the South Carolina Working Families Party.[1] The critical events relating to Platt's candidacy are as follows:

- March 17, 2008 - Platt filed a Statement of Intention of Candidacy for House Seat 115 with the Democratic Party, as well as a notice of candidacy and pledge.

- March 27, 2008 - Platt filed a Statement of Intention of Candidacy for House Seat 115 with the Working Families Party.

- March 30, 2008 - Deadline for filing a Statement of Intention of Candidacy pursuant to S.C. Code Ann. § 7-11-15.

- May 3, 2008 - Platt filed a Statement of Intention of Candidacy for House Seat 115 with the Green Party and was chosen as the Green Party's nominee for that office at

---

[1] South Carolina law does not prohibit "electoral fusion," which allows a candidate to be nominated by more than one certified political party for the same elected office in a partisan election. Joint Stip. ¶ 24 (Dkt. No. 81). Candidates, therefore, may seek multiple party nominations for the same office. The nominees selected by any party's primary or convention "must be placed upon the appropriate ballot for the election as candidates nominated by the party" if the party certifies the names of those nominees to election officials by the August 15 deadline. S.C. Code Ann. § 7-13-350. A candidate who earns multiple party nominations must appear on the ballot under the nominating parties and all votes for the fusion candidate are combined when determining the winner of the election. Joint Stip. ¶ 27. *See* 1970 S.C. Op. Att'y Gen. 187, 1970 WL 12919.

2

>    its state convention held the same day.
>
> - May 10, 2008 - The Working Families Party chose Platt as its nominee for House Seat 115 at its convention.
>
> - June 6, 2008 - Platt lost the Democratic Party primary for House Seat 115.

According to Platt, his name should have appeared on the ballot as the nominee of the Green Party and the Working Families Party when his name was certified to election officials by those parties. However, Garry Baum, an employee of the South Carolina State Election Commission ("SCSEC"), notified Platt that he was precluded from appearing on the ballot as the nominee of the Green Party or the Working Families Party based on S.C. Code Ann. § 7-11-10, which is known as the "sore-loser statute."

Platt sought review of Baum's decision by SCSEC. On June 27, 2008, SCSEC addressed the issue of whether Platt should be permitted to have his name placed on the ballot, but declined to overrule Baum's decision. On August 7, 2008, the South Carolina Green Party ("Green Party"), Platt, and Robert Dunham[2] filed this action against SCSEC and its Commissioners in their official capacities seeking (1) a declaratory judgment that South Carolina's sore-loser statute is unconstitutional as applied to Plaintiffs; (2) a preliminary injunction requiring SCSEC to place Platt's name on the ballot in 2008; (3) a permanent injunction enjoining SCSEC from enforcing the sore-loser statute to exclude a certified party's candidate who loses another party's primary or convention; (4) nominal damages; and (5) attorneys' fees. Plaintiffs filed their motion for preliminary injunction at the same time.

South Carolina law requires every candidate for public office who seeks a party's nomination

---

[2] The Working Families Party is not a party to this action. The Working Families Party did not challenge SCSEC's failure to place Platt on the ballot.

3

to sign and file with party officials the following pledge:

> I hereby pledge myself to abide by the results of the primary or convention.
> I shall not authorize my name to be placed on the general election ballot by
> petition and will not offer or campaign as a write-in candidate for this office
> or any other office for which the party has a nominee.

S.C. Code Ann. § 7-11-210.[3] Platt signed this pledge in connection with his candidacy in the Democratic Party's primary election. *See* Dkt. No. 23-5. Pursuant to his pledge, Platt was required to "abide by the results of the primary or convention." *Id.* The parties agree that after his defeat in the Democratic Party's primary election, Platt did not offer or campaign as a write-in candidate for House Seat 115, or any other office for which the Democratic Party had a nominee. Joint Stip. ¶ 37. Platt did, however, continue to campaign as the Green Party's nominee for House Seat 115. Joint Stip. ¶ 38.

Seeking to prohibit that activity, the Charleston County Democratic Party ("CCDP") filed an action against Platt in state court on August 22, 2008, to enforce the party-loyalty pledge contained in S.C. Code Ann. § 7-11-210. On September 18, 2008, this court held a hearing to

---

[3] A candidate's pledge in its entirety provides:
I hereby file my notice as a candidate for the nomination as _____ in the primary election or convention to be held on _____. I affiliate with the _____ Party, and I hereby pledge myself to abide by the results of the primary or convention. I shall not authorize my name to be placed on the general election ballot by petition and will not offer or campaign as a write-in candidate for this office or any other office for which the party has a nominee. I authorize the issuance of an injunction upon ex parte application by the party chairman, as provided by law, should I violate this pledge by offering or campaigning in the ensuing general election for election to this office or any other office for which a nominee has been elected in the party primary election, unless the nominee for the office has become deceased or otherwise disqualified for election in the ensuing general election. I hereby affirm that I meet, or will meet by the time of the general or special election, or as otherwise required by law, the qualifications for this office.
S.C. Code Ann. § 7-11-210. A candidate who refuses to sign the pledge may not appear on the general election ballot. Joint Stip. ¶ 22 (Dkt. No. 81).

4

consider CCDP's motion to intervene as a defendant[4] and Plaintiffs' motion for preliminary injunction seeking to prohibit SCSEC from disqualifying Platt from the general election ballot as the Green Party's nominee for State House Seat 115. The court granted CCDP's motion to intervene but denied Plaintiffs' motion for preliminary injunction, setting forth its reasons in a detailed oral ruling. Dkt. No. 49 (Sept. 18, 2008 hearing transcript). Accordingly, Platt's name did not appear on the general election ballot as any party's nominee. On or about September 19, 2008, the state court entered an injunction pursuant to S.C. Code Ann. § 7-11-210 prohibiting Platt from "offering or campaigning as a candidate" for House Seat 115.[5]

After CCDP intervened as a Defendant, Plaintiffs filed an amended complaint adding CCDP as a Defendant and asserting several new claims. Through this action, Plaintiffs seek a declaratory judgment under 42 U.S.C. § 1983 that Defendants' application or enforcement of S.C. Code Ann. § 7-11-10, § 7-11-15, and § 7-11-210 violate Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek a permanent injunction enjoining Defendants from enforcing these statutes to the extent they provide one political party an effective veto over another party's chosen nominee. Finally, Plaintiffs seek nominal damages and attorneys' fees.

### III. DISCUSSION

**A. Preliminary Issues**

---

[4] Plaintiffs objected to CCDP's motion to intervene. Dkt. No. 34. SCSEC Defendants did not object. Dkt. No. 35.

[5] At the time of oral argument on Plaintiffs' motion for preliminary injunction, the court understood that the state court had recently issued an injunction against Platt based on the party-loyalty pledge statute. *See* Dkt. No. 49 at 6. The parties stipulate that the actual date that the state court order was entered was "on or about September 19, 2008." Joint Stip. ¶ 39.

The court addresses several preliminary issues before reaching the merits of Plaintiffs' constitutional claims.

**1. Proper Parties**

**a. Charleston County Democratic Party**

CCDP moves for summary judgment as to Plaintiffs' 42 U.S.C. § 1983 claim on the grounds that CCDP is not a "person" acting under color of state law under § 1983. The court recognizes that CCDP intervened in this action as a Defendant.[6] Nonetheless, the court is not aware of, and the parties have not identified, any authority to hold a political party liable under § 1983 for a ministerial act required by statute.[7] It is, therefore, doubtful that CCDP is properly named as a Defendant in the § 1983 claim in Plaintiffs' amended complaint. Based on the court's ultimate conclusion on the merits, however, the court need not resolve this issue.

---

[6] CCDP moved to intervene in this case as a Defendant based on its particular interest in the interpretation of the party-loyalty pledge. After the court granted CCDP's motion, Plaintiffs filed an amended complaint listing CCDP as a Defendant and recognizing that CCDP, "by and through its chairman, is authorized to enforce the notice or pledge required by S.C. Code Ann. § 7-11-210." Dkt. No. 63 at 4.

[7] CCDP concedes that the Democratic Party could be sued pursuant to § 1983 under the public function doctrine if Plaintiffs established that the Democratic Party was privately conducting primaries and excluding participants. *See, e.g.*, *Rice v. Elmore*, 165 F.2d 387, 391 (4th Cir. 1947) (finding that minority voters could proceed against the dominant political party under § 1983 when the state had delegated authority to run primaries that excluded minority voters). As the Fourth Circuit explained in *Rice*: "When these officials participate in what is a part of the state's election machinery, they are election officers of the state de facto if not de jure, and as such must observe the limitations of the Constitution. Having undertaken to perform an important function relating to the exercise of sovereignty by the people, they may not violate the fundamental principles laid down by the Constitution for its exercise." *Id.* According to CCDP, the public function doctrine should not be extended to the ministerial act of seeking an injunction in state court as required by state law. *See* Dkt. No. 83 at 4 (citing *Florence County Democratic Party v. Johnson*, 281 S.C. 218, 221 (1984) ("Clearly, the General Assembly retains authority over the election process and merely delegates to the county chairman the ministerial duty of filing suit should a defeated candidate violate the provisions of § 7-11-210.")). No cases cited by Plaintiffs extend the public function doctrine to the circumstances presented in this case.

**b. South Carolina State Election Commission**

SCSEC Defendants argue that SCSEC is not a proper party in an action brought pursuant to 42 U.S.C. § 1983. Plaintiffs concede that SCSEC is not a "person" for purposes of § 1983 but argue that under Rule 17(d) of the Federal Rules of Civil Procedure, a public officer who is sued in his or her official capacity may be designated by name, title, or both. Plaintiffs contend that they used "South Carolina State Election Commission" as their collective title. To the extent that SCSEC was sued as an entity, the court finds that SCSEC is not a proper defendant. *See, e.g.*, *Will v. Michigan State Police*, 491 U.S. 58 (1989) (holding that a state, state agency, or state official cannot be sued for damages under § 1983).

To the extent that the Commissioners are sued in their official capacities, Plaintiffs may seek injunctive relief from the Commissioners sued in their official capacity under the stripping doctrine of *Ex Parte Young,* 209 U.S. 123 (1908). *See Will*, 491 U.S. at 71 n.10. The court finds that the SCSEC Commissioners are proper defendants only as to claims for injunctive relief in their official capacities.[8]

**2. *Colorado River* Abstention**[9]

CCDP requests the court abstain from deciding Plaintiffs' claims based on *Colorado River* abstention. This judicially crafted abstention counsels federal courts to avoid federal decisions in

---

[8] Defendants argue, and Plaintiffs concede, that the Commissioners may not be sued for nominal damages because they are sued in their official capacities only, and not their individual capacities. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 & n.24 (1997); *Will v. Michigan State Police*, 491 U.S. 58 (1989). Any remaining claim for nominal damages from the named Commissioners is, therefore, dismissed.

[9] CCDP also argued that this court should abstain from addressing the constitutionality of any of these three statutes based on *Pullman* abstention. *See Railroad Commn. of Texas v. Pullman Co.*, 312 U.S. 496 (1941). After discussing the applicable law, CCDP concedes that its argument for *Pullman* abstention is particularly weak. *See* Dkt. No. 83 at 7 ("This recent discussion reveals that the Fourth Circuit might not follow the Democratic Party's reading of *England* above."). The court agrees and, therefore, rejects CCDP's request to abstain under *Pullman*.

"exceptional circumstances" where there are parallel federal and state law proceedings in which the rights of the parties will be determined on the same questions of law. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). CCDP asserts that *Colorado River* abstention is proper in light of pending state court proceedings[10] brought by the Chairman of the Charleston County Democratic Party against Platt to enjoin Platt from offering or campaigning as a candidate for House Seat 115 in the 2008 general election.

"In assessing whether *Colorado River* abstention is appropriate, [the court] must remain mindful that this form of abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and that '[a]bdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'" *Great American Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006) (quoting *Colorado River*, 424 U.S. at 813). The court must decide whether such circumstances exist "to justify the surrender of [] jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983).

The threshold consideration is, necessarily, whether there are parallel federal and state proceedings. *See Great American*, 468 F.3d at 207. If parallel proceedings exist, the court "must carefully balance several factors 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16).[11] Further, abstention may only be

---

[10] The state court action is being briefed on appeal. *See* Dkt. No. 83 at 8.

[11] Six factors have been identified to guide the court's analysis: "(1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and

8

considered when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28.

The state and federal court actions are not parallel. First, the parties in the two cases are not the same. The only parties in the state court action are the Chairman of the Charleston County Democratic Party and Platt. The Green Party and Dunham, Plaintiffs in this action, are not parties in the state case. Neither the South Carolina State Election Commission nor any of its Commissioners are parties in the state case. The lack of similarity of parties strongly suggests that the cases are not parallel under *Colorado River*. *See Great American*, 468 F.3d at 208 (finding proceedings not parallel when parties were different in state and federal actions). Second, the issue presented in the state court case is not the central issue presented in the federal case. The state court action relates to enforcement of South Carolina's party-loyalty pledge statute (§ 7-11-210). Although Plaintiffs challenge the constitutionality of the party-loyalty pledge statute, the central issue in this case is the constitutionality of SCSEC's interpretation and enforcement of the sore-loser statute as applied to Platt. Thus, while there is some overlap in parties and issues, the difference in the scope of issues presented in the state and federal cases suggests that the cases are not parallel under *Colorado River*. *See New Beckley Mining Corp. v. International Union*, 946 F.2d 1072 (4th Cir. 1991) (finding state and federal action not parallel because remedies sought and issues presented were not the same).

Further, any reversal of the state court's injunction by an appellate court will not affect the federal case. In state court, the Chairman of the Democratic Party successfully obtained an

---

the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights." *Chase Brexton Health Servs v. Maryland*, 411 F.3d 457, 463-64 (4th Cir. 2005).

injunction preventing Platt from campaigning for House Seat 115 in the 2008 election. In granting injunctive relief, the state court rejected Platt's argument that the pledge statute was unconstitutional. Even if an appellate court finds the pledge statute unconstitutional, this court would still need to address Plaintiffs' challenge to the constitutionality of the sore-loser statute. For reasons explained below, this court does not reach the issue of the constitutionality of the pledge statute.[12]

The court, therefore, finds that *Colorado River* abstention is not appropriate in this case because the state and federal cases are not parallel.[13] Accordingly, the court turns to the merits.

**B. Merits**

Defendants assert three bases for Platt's disqualification from appearing on the ballot as the Green Party candidate for House Seat 115: (1) the sore-loser statute (§ 7-11-10); (2) the party-loyalty pledge statute (§ 7-11-210); and (3) the filing deadline statute (§ 7-11-15). Plaintiffs challenge the constitutionality of each statute as applied to Platt. Plaintiffs rely, in particular, on

---

[12] The court notes that *Colorado River* abstention may be applicable to Plaintiffs' constitutional challenge to the pledge statute based on the state court's consideration of that issue. Because this court does not reach the merits of the constitutional challenge to the pledge statute, the court does not decide whether the court should abstain from deciding that issue under *Colorado River*. *See infra* p. 19 (Section III (B)(2)).

[13] Although the court need not address the six factors in the absence of a finding of parallel proceedings, the six factors weigh in favor of not abstaining under *Colorado River* for the following reasons: (1) the litigation does not involve property where the state court may assume *in rem* jurisdiction to the exclusion of the federal court; (2) the federal forum is not an inconvenient one for any of the parties; (3) a federal court determination will not encourage piecemeal litigation because state law required the Chairman of CCDP to file the state action; (4) the federal court obtained jurisdiction first and both cases have progressed simultaneously; (5) federal law provides the rule of decision on the merits; and (6) the state proceeding will not adequately protect the parties' rights because the issues presented are not identical.

South Carolina's allowance of fusion candidates as a basis for finding the challenged statutes unconstitutional.

Although the rights of voters are fundamental, not all restrictions imposed by states on candidates' eligibility for the ballot infringe on voters' rights to associate or to choose candidates. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). This is because states play a major role in structuring and monitoring the election process, including primaries. *California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000). In that role, states may adopt "generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Anderson*, 460 U.S. at 788 n.9. However, states must act within the limits imposed by the Constitution when organizing elections and creating ballot restrictions. *California Democratic Party*, 530 U.S. at 573.

In *Anderson*, the Supreme Court held that, when evaluating constitutional challenges to a specific provision of a state's election laws, a court must:

> first consider the character and magnitude of the asserted injury to the rights protected. . . . [then] identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights.

460 U.S. at 789. As the Court explained in a more recent case, the "rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). When a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the constitutional rights of voters, the state's important regulatory interests are generally sufficient to justify the restriction. *Id.* (citing *Anderson*, 460 U.S. at 788-89 n.9). If the challenged law places

severe or discriminatory burdens on the rights of political parties, candidates, or voters, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). "No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997) (citing *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

**1. Sore-Loser Statute (§ 7-11-10)**

Plaintiffs allege that South Carolina's sore-loser statute, which provides, in part, that "no person who was defeated as a candidate for nomination to an office in a party primary or party convention shall have his name placed on the ballot for the ensuing general or special election, " abridges their right to freedom of association. S.C. Code Ann. § 7-11-10.

Plaintiffs concede that states may limit fusion candidacies and even prohibit fusion. *See* Dkt. No. 84 at 7-8 (citing *Timmons*) (holding that Minnesota's law prohibiting fusion candidacies was constitutional and supported by Minnesota's legitimate interests). Plaintiffs also concede that sore-loser statutes are constitutional. *See* Dkt. No. 84 at 8 (citing *Storer*, 415 U.S. at 736 (holding that disaffiliation statute is constitutional and implying that statute providing that "a candidate who has been defeated in a party primary may not be nominated as an independent or be a candidate of any other party" is also a valid part of "the candidate nominating process")). *See also Backus v. Spears*, 677 F.2d 397, 400 (4th Cir. 1982) (concluding that "*Storer v. Brown* unmistakenly indicates that a city may constitutionally refuse to accept an otherwise valid petition that seeks to place the name of a defeated primary candidate on the general election ballot."). However, Plaintiffs argue that South Carolina's allowance of fusion renders its sore-loser statute unconstitutional. The court does not follow Plaintiffs' logic. If states can prohibit fusion, then states can certainly limit fusion based

12

on an otherwise constitutional sore-loser statute. The court will, however, fully analyze the sore-loser statute under *Anderson*.

### a. Burdens

Plaintiffs allege that their First Amendment right to associate is abridged by the sore-loser statute because it burdens (1) a political party's right to choose its own candidate for public office, and (2) the right of qualified voters to cast their votes effectively. As applied to them, Plaintiffs argue a "sore loser" should not be defined to include candidates like Platt who successfully secure one party's nomination and then subsequently lose another party's nomination. Plaintiffs contend that this interpretation of the sore-loser statute allows a party to effectively veto another party's nomination. Plaintiffs would limit the sore-loser statute to those "who seek[] ballot access through an alternative route *after* the candidate loses a nomination." Dkt. No. 84 at 11. According to Plaintiffs, Defendants' application of the sore-loser statute to candidates like Platt allow one political party to unconstitutionally burden another party's right to choose its own candidate.

Plaintiffs also argue that members of the Green Party are unable to cast their votes effectively because Platt's name cannot appear on the general election ballot. Plaintiffs argue that because these rights "rank among our most precious freedoms," the court should apply strict scrutiny and strike down the statute unless it is narrowly drawn to advance a compelling state interest.[14]

The First Amendment protects the right of citizens to associate and form political parties for

---

[14] South Carolina's sore-loser statute applies to all candidates without discrimination against major or minor party candidates. The prohibition on ballot placement of a nominee who has been defeated in another party's primary or convention applies to candidates nominated by a primary, a convention, or a petition. Thus there is no evidence (and therefore Plaintiffs do not allege) that the sore-loser statute applies to candidates or political parties in a discriminatory manner.

The court notes that write-in candidates are not affected by the sore-loser statute. Their ability to campaign is, however, restricted by the pledge statute.

the advancement of common political goals and ideas. *Timmons*, 520 U.S. at 357 (citing *Colorado Republican Federal Campaign Comm. v. Federal Election Comm.*, 518 U.S. 604, 616 (1996)). The right of association includes a party's right to select its own candidate, or its "standard bearer," but does not amount to an absolute right to have the chosen nominee appear on the ballot. *Id.* at 359. This is because a nominee's failure to meet state election law requirements may reasonably prevent the nominee's name from appearing on the ballot. *See Burdick*, 504 U.S. at 440 n.10 (stating that regulation limiting ballot access to candidates who comply with state election laws is reasonable); *Anderson*, 460 U.S. at 792 n.12 (stating that although a disaffiliation statute may preclude voters from voting for some candidates, voters are free to support candidates who comply with the statute).

Platt, although nominated by the Green Party, was disqualified from appearing on the ballot based on South Carolina's sore-loser statute. The Green Party had notice that Platt was seeking additional nominations when it nominated Platt on May 3, 2008, and therefore assumed the risk that Platt might subsequently lose either the Working Families Party's or the Democratic Party's nomination, and thus be disqualified from the ballot by the sore-loser statute.[15] The Green Party, however, was also offered the potential benefit that Platt would be listed multiple times on the ballot if he succeeded in obtaining the two other nominations.

In Platt's case, the Green Party's risk did not pay off. The sore-loser statute did not prevent the Green Party from having a candidate of its choice appear on the general election ballot, but only

---

[15] Platt was only eligible to seek the Green Party's nomination because he filed a timely statement of intention with the Democratic Party on March 17, 2008, and the Working Families Party on March 17, 2008. Platt filed his statement of intention with the Green Party on May 3, 2008, after the statutory deadline of March 30, 2008. During the 2008 election, it was SCSEC's policy to allow a candidate seeking multiple nominations to rely on a timely filing of a statement of intention. Platt's nomination to the Green Party was, therefore, dependent on his timely filings with the either the Democratic Party or the Working Families Party.

14

prevented it from having its *first* choice (Platt) appear on the ballot. Further, nothing prevents the Green Party from nominating Platt in a future election. Under the sore-loser statute, the Green Party was able to nominate another candidate who had originally been defeated by Platt based on Platt's disqualification.[16] And, the Green Party was still able to nominate Platt; the nomination, however, would be ineffective in placing Platt's name on the ballot. The court concludes that the Green Party's burdens are not severe as to require strict scrutiny. *See Burdick*, 504 U.S. at 434.

Neither are Platt's burdens so severe. Platt had notice of the sore-loser statute when he decided to seek multiple nominations and similarly assumed the risk associated with seeking multiple nominations. Platt's burdens were, moreover, effective only for the remainder of the 2008 election season. Platt can seek nomination for House Seat 115 in the next election as the candidate of any party or parties he chooses.

None of the burdens on Robert Dunham, a registered Green Party member who intended to vote for Platt, are severe. As a district court in the Western District of Texas recognized:

> The "sore loser" statute does not prohibit [members of the U.S. Taxpayers Party] from selecting a Presidential nominee and placing his or her name on the ballot. It does not discriminate against independent candidates, nor does it create burdensome ballot access requirements for third parties. Rather, the provision bars [members of the U.S. Taxpayers Party] from selecting as their nominee an individual who has already run in a party primary and lost, namely Pat Buchanan. This is not to say that Pat Buchanan could not have been the U.S. Taxpayers Presidential nominee. Had Mr. Buchanan aligned himself with the [Party] earlier and never run in the Republican Primary, there would be no obstacle to the [Party] placing his name on the ballot this November. Furthermore, there is nothing to prevent the U.S. Taxpayers Party from running Mr.

---

[16] An exception to the sore-loser statute applies when "the candidate first selected as the party's nominee dies, resigns, is disqualified, or otherwise ceases to become the party's nominee for such office before the election is held." S.C. Ann. § 7-11-10. *See also* § 7-11-50 (providing that "[i]f a party nominee who was nominated by a method other than a party primary election . . . becomes disqualified after his nomination[,] . . . the respective state or county party executive committee may nominate a nominee for the office . . . ."

15

> Buchanan in the next Presidential election. Although the "sore loser" statute impacts the [members'] fundamental rights as voters, the magnitude of the injury is not great.

*Nat'l Comm. of U.S. Taxpayers Party v. Garza*, 924 F. Supp. 71, 74 (W.D. Tex. 1996) (finding that voters whose candidate was disqualified from appearing on the ballot by Texas's sore-loser statute were not significantly burdened). Dunham was burdened in the sense that his first choice candidate's name did not appear on the general election ballot in 2008. However, Dunham was not prevented from voting for Platt as a write-in candidate.[17] Neither was his candidate prevented from being placed on the ballot due to some discriminatory or unfair requirement. Under these circumstances, Dunham's First Amendment rights were not severely burdened by application of the sore-loser statute. *See Taxpayers Party*, 924 F. Supp. at 74.

In summary, the application of a sore-loser statute in connection with fusion does not elevate Plaintiffs' burdens to a level requiring strict scrutiny. As the Supreme Court explained in *Timmons*, even a complete ban on fusion does not work an undue hardship because it does not "preclude[] minor parties from developing and organizing," or "exclude[] a particular group of citizens, or a political party, from participation in the election cycle." 520 U.S. at 361 (finding that burdens imposed on a minor political party by a fusion ban are not severe). Similarly, the effect of South Carolina's sore-loser statute on fusion candidates does not impose severe burdens on a minor political party like the Green Party because the Green Party can still develop, organize, and participate in the election cycle. The Green Party can choose to support a candidate seeking multiple party nominations with the associated risk that such a candidate will lose one of the sought-

---

[17] The court recognizes that the ability to write in a candidate's name is no substitute for the candidate's name appearing on the ballot. *See Lubin v. Panish*, 415 U.S. 709, 719 n.5 (1974) ("The realities of the electoral process, however, strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot.").

16

after nominations or it can avoid that risk by nominating a candidate not seeking multiple nominations.

None of these burdens is unreasonably discriminatory or severe as to require application of strict scrutiny. Accordingly, the court considers whether the state has important regulatory interests to justify the sore-loser statute. If so, the statute passes constitutional muster under *Burdick* and *Anderson*.

### b. State Interests

Defendants argue that the sore-loser statute furthers three important state interests: (1) minimizing excessive factionalism; (2) preventing intra-party feuding or disputes; and (3) avoiding voter confusion. Dkt. No. 85-2 at 10. On reply, SCSEC Defendants suggest at least four additional interests, including ensuring orderly, fair, and honest elections; maintaining the integrity of various routes to the ballot; maintaining a stable political system; and ensuring that elections are operated equitably and efficiently. Dkt. No. 98 at 3. For reasons set forth below, the court finds significant state interests served by South Carolina's sore-loser statute as applied to fusion candidates.

**Party Stability.** As the Supreme Court recognized in *Timmons*, states have an interest "in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." 520 U.S. at 364. A state's interest in stable political systems allows regulations that "temper the destabilizing effects of party-splintering and excessive factionalism." *Id.* at 366-67. Legislation such as South Carolina's sore-loser statute falls within the scope of such permissible regulation. *See Cromer v. State of South Carolina*, 917 F.2d 819, 825 (4th Cir. 1990) (recognizing that "sore-loser provisions (which South Carolina has in place . . .) are justifiable measures for preventing splintering and factionalism within the major parties."); *Backus*, 677 F.2d at 399 (holding that "South Carolina certainly has the power, as a permissible adjunct to promoting

17

orderly primary elections, to forbid petition candidacies by persons who have been defeated in party primaries.") (citing *Storer*). *See also Storer*, 415 U.S. at 735 ("The general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds.").

**Voter Confusion.** The Court has also recognized that the state has a strong interest in avoiding voter confusion. *Timmons*, 520 U.S. at 364 (recognizing Minnesota's state interest in avoiding voter confusion in support of anti-fusion law). This interest has been found sufficient to support both anti-fusion and sore-loser laws. *See id*; *Taxpayer's Party*, 924 F. Supp. at 75 (recognizing Texas's interest in preventing voter confusion in sore-loser statute); *White v. West*, No. 74-1709 (D.S.C. Jan. 9, 1975) (three-judge panel holding that a prior version of South Carolina's sore-loser statute was constitutional to prevent voter confusion, to prevent intraparty feuds, and to preserve the integrity of the election process).

Plaintiffs argue that South Carolina's interests are not achieved by the sore-loser statute in light of the timing of Platt's loss in the Democratic Primary (after securing the Green Party's nomination at its convention). South Carolina's sore-loser statute applies to all candidates, regardless of the timing of the loss of a party's nomination. The same interests advanced by the state and recognized by the Supreme Court in *Storer* apply to a candidate who first obtains one party's nomination and then loses another party's nomination. The timing of the candidate's loss does not substantially alter the state interests served by the sore-loser statute.

Plaintiffs also argue that application of the sore-loser statute to Platt will discourage fusion candidacies in South Carolina. Although South Carolina allows fusion candidacies,[18] it is not

---

[18] Historically, fusion was a regular practice. *Timmons*, 520 U.S. at 356 (citing Argersinger, *A Place on the Ballot: Fusion Politics and Antifusion Laws*, 85 Am. Hist. Rev. 287, 288-90 (1980)). Today, only a few states permit fusion. *See* Adam Morse & J.J. Gass, Breenan Center for Justice, *More Choices, More Voices: A Primer on Fusion* 1 (2006) (naming seven states that permit fusion).

18

necessarily a policy which South Carolina seeks to promote. There is no statute that provides for fusion candidacies. Rather, the absence of a statute prohibiting fusion, an attorney general's opinion discussing fusion, and court cases describing South Carolina's election laws are the only sources that confirm fusion is allowed. The court recognizes that the *practice* of fusion candidacies is accepted in South Carolina. The court will not, however, interpret those sources to mean that South Carolina has a *policy* of promoting fusion. Plaintiffs' argument that the sore-loser statute discourages fusion is, therefore, not persuasive.

The court concludes that South Carolina's asserted interests are sufficient to justify the application of the sore-loser statute to preclude Platt's name from being placed on the ballot. The court, therefore, holds that South Carolina's sore-loser statute, S.C. Code Ann. § 7-11-10, is constitutional as applied to Platt's candidacy for House Seat 115.

**2. Party-Loyalty Pledge Statute (§ 7-11-210) & Filing Deadline Statute (§ 7-11-15)**

`Having reached this conclusion, the court need not examine the constitutionality of two other provisions (§ 7-11-15 and § 7-11-210) of the South Carolina Code that relate to Platt's eligibility to appear on the general election ballot. As stated in *Storer*, "[e]ven if these statutes were wholly or partly unconstitutional, [Platt was] still properly barred from having [his] name placed on the [2008] ballot." 415 U.S. at 736-37. The sore-loser statute is a valid, absolute bar to having one's name placed on the general election ballot. The application of the other challenged statutes, although potential additional bars to Platt's candidacy, was not necessary to exclude Platt's name from the ballot. When the Green Party provided Platt's name to SCSEC for placement on the ballot, SCSEC stated that Platt was disqualified under the sore-loser statute. The other election provisions

19

which perhaps provided additional bases for SCSEC to exclude Platt from the ballot were not asserted until litigation. Accordingly, in reliance on *Storer*, the court declines to address the constitutionality of S.C. Code Ann. § 7-11-15[19] and § 7-11-210. *See Storer*, 415 U.S. at 736-37 (declining to address the constitutionality of other challenged election provisions after concluding that the candidate was properly barred from the ballot by one provision).

## CONCLUSION

Based on the reasons stated above, the court finds that South Carolina's sore-loser statute is constitutional as applied to Platt's candidacy for House Seat 115 in the 2008 general election. Plaintiffs' motion for summary judgment is, therefore, denied. Defendants' motions for summary judgment are granted.

**IT IS SO ORDERED.**

                                          s/ Cameron McGowan Currie
                                          CAMERON MCGOWAN CURRIE
                                          UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 12, 2009

---

[19] Although much has been briefed about the filing deadline statute, Plaintiffs and SCSEC Defendants concede that the issue is moot as it related to any prospective relief. *See Federal Election Comm. v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007). This is because SCSEC has now developed a policy concerning filing deadlines that is consistent with the plain language of the statute. S.C. Code Ann. § 7-11-15. SCSEC's purported new policy requires that a candidate file a statement of intention with every party from which he or she seeks nomination by the statutory March 30 deadline. They agree that Platt's particular circumstances as to filing deadlines for the 2008 election have no effect on the application of this policy in future elections. Although CCDP disagrees, the court concludes that the issue is moot as to any prospective relief.